THE STATE *ex rel.* ATTORNEY GENERAL, *Relator*, v.
MANUFACTURER'S MUTUAL FIRE INSURANCE
COMPANY.

1. **Mutual Insurance**: PAYMENT OF PREMIUMS. The theory of
   mutual insurance, as generally understood, is, that the premiums
   paid or to be paid by the members for their insurance constitute a
   fund for the liquidation of losses. It is not essential that the pre-
   miums should be paid 'by note. They may be paid in cash, and
   when so paid the cash stands for the note ; the policy being still a
   mutual policy and its holder a member of the association.

2. ——: PREMIUMS : POLICIES: STATUTES. Under the present statutes
   of this state, mutual insurance companies may issue policies for
   premiums paid all in cash at the times the policies are issued.

3. ——: TIME OF POLICIES: STATUTES. Nor are such mutual com-
   panies, under said statutes, limited as to the time for which the
   policies shall be issued.

4. ——. The fact that the policies of said companies are issued for
   all cash and on short time does not make the policies stock ones.

*Quo Warranto.*

DEMURRER TO PETITION SUSTAINED.

*B. G. Boone*, Attorney General, *Given Campbell*
and *Ellerbe & Hicks* for relator.

(1)   A corporation organized under the present laws
for insuring against loss by fire, upon the mutual plan,
cannot lawfully issue policies of insurance of the char-
acter and number complained of in the information.   A
mutual company has certain well-defined features and
limitations, and its nature and characteristics, as distin-
guished from other companies, has been judicially consid-
ered.   The principle lying at the foundation of such com-
panies is their mutuality ; neither in their organization
or practice is any direct profit contemplated or realized.

*Insurance Co. v. Boeckler*, 19 Mo. 139 ; *Commonwealth v. Insurance Co.*, 112 Mass. 116 ; *Lycoming Insurance Co. v. Commonwealth*, 10 Weekly Notes Cases, 228, [Sup. Ct. Pa.] ; *Insurance Company v. Perrine*, 7 W. & S. 348 ; Wood on Fire Insurance, sec. 538 ; May on Insurance [2 Ed.] p. 838, sec. 548 ; Angell on Insurance, sec. 413, p. 413. (2) From the petition it appears that the major portion of the business of respondent consists in the issuing of policies, for definite sums in cash, to persons who enter into no contract with the company, are not members thereof, have no relation thereto, except as purchasers of insurance, do not participate in the management of the company, have no concern in its losses, and owe it no duty. It is obvious that such a course of business has nothing in common with mutual insurance. If such business can be conducted by a mutual company, such permission must be found in the statutes, which is not the case. The statutes have for their obvious purpose the establishment and preservation of the mutual character of such companies. (3) A joint stock insurance company is a business corporation engaged in vending insurance, its object, a profit to the stockholders. Its responsibility lies in its capital. The assured has no relation to the company, save as the purchaser and holder of its promise to pay upon certain contingencies. The facts show that respondent has assumed this attitude with respect to the larger part of its business and is engaged in a general insurance business upon the stock plan. (4) There are a number of cases wherein it has been held that the payment of a cash premium is not in itself inconsistent with the mutuality requisite in mutual companies. These cases all proceed upon the theory that the cash is a mere substitute for a premium note, and that in all other respects the cash policy-holder stands in the same relation and has the same rights, duties, and burdens with respect to the company and

his co-members, as have those who make premium notes. See *Mygatt v. New York Prot. Co.*, 51 N. Y. 156; *Union Insurance Co. v. Hoge*, 21 How. 35; *Insurance Co. v. Marietta Woolen Mills*, 3 Ohio St. 348.

*George D. Reynolds,* and *W. S. Relfe* for respondent.

(1)   To lawfully do the business of fire or marine insurance in this state, in any form, by association of individuals, implies the grant of a franchise.   R. S., sec. 6016*b*, as enacted in acts of 1881, p. 151, sec. 2; *State v. Citizens*, 6 Mo. App. 167.   In this, our state has adopted the policy of New York.   *People v. Utica Insurance Co.*, 15 Johns. 358.   (2) When the General Assembly of this state in 1869, placed the business of insurance under state supervision, it saw fit, in granting a franchise for the transaction of fire and marine insurance business, to divide the companies engaged in it into two classes. First, stock companies; second, mutual companies.   See Acts 1869, p. 45, sec. 2; also, 1 W. S., sec. 2, p. 760.   And by the same section it was provided that " it shall be unlawful for any corporation so formed to do business on any other plan than that upon which it is organized, and   *   *   *   mutual companies shall not issue policies known as stock policies, or do business as joint stock companies, or upon the joint stock plan." Thus a wall was erected by the legislature, separating the two kinds of business, in so far as related to companies incorporated under the general law.   This was a departure from the previous policy of the state, as shown in the multitude of private charters theretofore granted to insurance companies.   By many of these charters, companies were permitted to do both : to have capital stock, and stockholders, and thus issue stock policies, and also to carry on business on the mutual insurance plan, that is, to have a set of members not stockholders, but joint insurers, mutual insurers, who were not

liable as stockholders, and who had no recourse on the capital stock proper, or on its owners, the stockholders, and whose premiums were payable, sometimes in all cash, and sometimes in cash and assessable notes. See Acts 1845-6, p. 197 ; Acts 1865, p. 201 ; Acts 1857, p. 477. (3) The rule, namely, that the "mutual plan," "mutual policies," "joint stock plan," "joint stock policies" did not depend on the manner in which the premiums were paid, whether by cash or by assessable notes, or part each, was announced in Ohio in the case of the *Insurance Co. v. Woolen Factory*, 3 Ohio St. 348. This case is fully noticed in the *New York case*, *supra*. So, too, it is held in *Union Insurance Co. v. Hoge*, 21 How. 35, also cited in the *New York case*, and to which we call especial attention, as it is in point on other branches of this case. To the same effect is the case of *Schimpf v. Insurance Co.*, 86 Pa. St. 373, and the case of *Spurance v. Insurance Co.*, 10 Pac. Rep. ; also *Carleton v. Insurance Co.*, 72 Ga. 371, at pp. 400 and 403. (4) It is the unmistakable policy of the law, and the clear duty of the company to so manage its affairs that the burden of losses and expenses shall be borne ratably and in just proportion by all its members, whether they acquired that relation by paying premiums in cash or by note. The fund of the company is made up of cash and assessable notes, and in making an assessment upon the latter to pay losses and expenses, due consideration must be given to the proportionate amount of cash contributed by the policy-holders, and the assessment adjusted accordingly, so that each would pay his proportionate and equitable share. *Schimpf v. Fire Insurance Co.*, *supra* ; *Union Insurance Co. v. Hoge*, *supra*.

*Taylor & Pollard* also for respondent.

The information is insufficient because (1) It fails to allege that the Superintendent of Insurance has not

issued to respondent his certificate of authority to transact business during the current year, 1886. (2) It fails to show that respondent has violated the statute, but on the contrary shows that it has complied with the insurance law in all its regards. (3) It fails to show that the respondent is either insolvent or unable to meet all its engagements at maturity.

BLACK, J.—This case stands upon a demurrer to an information filed by the Attorney General for a writ of *quo warranto*. The object sought by the writ is to require the respondent to show cause why it should not be dissolved for using the franchise of a stock insurance company, it being only a mutual insurance company. The respondent was incorporated in December, 1884, under article 3, chapter 119, Revised Statutes, 1879, as a mutual fire and marine insurance company.

The information, in substance, states that the respondent has issued a great number of policies known as stock policies, that is to say, policies running for periods of time less than six years, and varying from two days to five years, and for which it receives at the time of the issuance of the policies, a total cash premium ; that, on the eighteenth of February, 1886, respondent had policies of this description in force, insuring the total amount of $3,275,119.37, for which it has received in cash premiums, the amount of $60,535.85, and that, at the institution of this suit, the outstanding policies of this character numbered three thousand two hundred. It is also alleged that, on the eighteenth of February, 1886, the respondent had outstanding four hundred and six mutual policies, insuring the aggregate sum of $997,532.31, for which it held premium notes of the face value of $149,201.25 ; and that, at the commencement of this suit, there were but four hundred policies of this description in force.

The questions presented by the demurrer are : (1) Has the respondent the right to issue policies running for

.a period of time short of six years ; (2) has it a right to issue policies for premiums payable wholly in cash at the time the policies are issued. An answer to these questions must, in a great measure, depend upon a proper construction of the statutes with respect to the organization of these companies. The legislation upon that subject has been so varied and diverse, that we do not regard it essential to go back further than the act of March 10, 1869. Acts of 1869, p. 45. That act provided for the incorporation of fire and marine insurance companies on the " stock plan " and on the "mutual plan." It is there expressly declared that mutual companies shall not issue policies known as stock policies, or do business as joint stock companies, or upon the joint stock plan (sec. 2) ; and the remainder of the act. is consistent with the legislative assertion. After the organization, the distinguishing features of the mutual companies, so far as defined by that act, are, that every person who insures must make his note to the company for the premium, a part of which, not less than ten per cent., must be paid in cash at the date of the policy. The notes are made payable at any time, in part or in whole, as the directors may demand, by assessment for payment of losses and other liabilities of the company. The assessment must be made upon all notes held by the company which have been in existence for one year at the date of the loss. The notes upon which all assessments have been paid, at the expiration of the policies, are delivered up to the makers, whether paid in full or not. The principle of the scheme throughout is mutuality, and the contrary not being declared by the law, each policy-holder becomes a member of the association and continues such, certainly, during the life of the policy. 2 Wood on Fire Insurance, sec. 538. The law, as it then stood, does not contemplate the issuing of policies for all cash premiums, nor can the right to issue what are called short-time policies be easily

reconciled with the various provisions of the act of 1869. Enough has been said to show the general policy of that act, which is the basis of the present law upon the sub- ject. Many of the sections are the same, others have been amended, and some new ones have been added.

It remains to be seen what effect is to be given to the amendments. The present statute, as before, points out in detail how the stock companies and mutual com- panies may be organized, and when they may commence business; and section 5988 makes it the duty of every company, organized on the mutual plan, to have the word "mutual" affixed to the name; and it is made unlawful for such companies to do business on any other plan. The same section also declares: "and mutual companies shall not issue policies known as stock poli- cies, or do business as joint stock companies, or upon the joint stock plan; [but any mutual company, upon a majority vote of its members present at an annual meet- ing, or at any special meeting, called for that purpose, after one week's notice by advertisement, * * * may charge and receive for the mutual benefit of all its policy- holders, cash in payment of premiums on such of its poli- cies as shall be, by a majority vote at any such meeting, determined upon."] Section 6000, among other things, provides: "Every person who shall insure in such mutual company [whose premium is payable in note] shall, before he receives his policy, deposit with the company a note," etc. The quoted words enclosed in brackets were introduced by the act of 1877. These amendments are significant, and this must be apparent when they are considered in connection with the act of 1869. They show a determination to make a most im- portant change in respect of the powers of these mutual companies. Express authority is given them to charge and receive all cash premiums for the benefit of all policy-holders.

In the present case the information shows that, by a

vote, after due notice, it was resolved to charge and receive cash in payment for premiums on policies issued for a period less than six years. Such a course of business, it is argued, has nothing in common with, and is inconsistent with, mutual insurance.

The first answer to this argument is, if the law clearly gives companies organized on this mutual plan power to issue policies for all cash premiums, and we hold that it does, then we can only declare the law as we find it. It is no objection that this power is one conferred upon stock companies, or one not usually possessed by mutual companies. The legislature can, for itself, define what it means by the "mutual plan," and this it does in specifying the duties and powers of these companies. Some of these powers may well be common to both.

But the argument is not sound for another reason. The theory of mutual insurance, as generally understood, is, that the premiums paid, or to be paid, by the members for their insurance, constitute a fund for the liquidation of losses. It is not essential that the premiums should be paid by note. They may be paid in cash, and when so paid the cash stands for the note. The policy is still a mutual policy, and the holder thereof a member of the association. *Union Insurance Co. v. Hoge*, 21 How. [U. S.] 35; *Ohio Mutual Insurance Co. v. Marietta Woolen Factory*, 3 Ohio St. 348; *Mygatt v. Insurance Co.*, 21 N. Y. 52; *Schimpf v. Insurance Co.*, 86 Pa. St. 373; *Spruance v. Insurance Co.*, 10 Pac. Rep. 287. Under the present statutes of this state, these mutual insurance companies may, therefore, issue policies for all such premiums paid at the time the policies are issued.

The only limitation as to the time policies shall run is that found in sections 5999 and 6001. The first provides for an organization with a guarantee fund and without a guarantee fund. If the company is organ-

ized without a guarantee fund, then before it can commence business it must have a designated amount of agreements for insurance with thirty per cent. of the premium paid in cash, and the balance secured by premium notes of solvent parties, founded on *bona fide* applications for insurance. The company may then receive a certificate to do business from the superintendent of insurance. The policies required to be issued for a period not shorter than six years are the policies to be issued on account of the notes given at the organization. The whole section seems to relate to matters pertaining to the preliminary steps to be taken for the commencement of business, and we cannot see that this requirement to issue six-year policies has any application, save as to those policies issued upon the notes made for the purpose of commencing business. Section 6001 does require that the assessments to pay losses, expenses, etc., shall be made upon each and every note held by the company at the time of the assessment, and which has been in existence for one year prior to the date of the assessment. Had these companies no power to issue cash policies, then this provision would indicate that short-time policies should not be issued. But as they have the power to issue policies for all cash, then there cannot be any difficulty because of short-time policies, for they can be issued for all cash, and no assessments will be required. We cannot see that these mutual companies are limited as to the time for which policies shall be issued. Effect must be given to the amendments before noted, and they show a determination to make a radical change in the law of 1869.

The amount of business done by the respondent, by way of all cash policies, exceeds that done by way of notes for premiums, in the ratio of about ten to three, and it is earnestly insisted that the legislature never contemplated such results, and it is said these policy-

holders are without security. The answer is, that the legislature has fixed no limit as to the amount of cash business these mutual companies may do. If the law is defective in this respect the remedy must come from the law-making power. There are statements in the information that the respondent has issued, and is issuing, large numbers of policies known as stock policies, but this we understand to be the conclusion of the pleader, based upon the other facts alleged, the most prominent of which are that the policies are issued for all cash and on short time. These facts do not make the policies stock policies.

It results from what has been said that the demurrer must be sustained, and it is so ordered. Brace, J., absent, the other judges concur.