*Decisions will be entered under Rule 50.*

KEYSTONE AUTOMOBILE CLUB CASUALTY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

KEYSTONE AUTOMOBILE CLUB FIRE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

KEYSTONE AUTOMOBILE CLUB ACCEPTANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 90931, 90932, 90933, 91484, 91485, 91486.

Promulgated July 27, 1939.

*R. Lester Moore, Esq.*, for the petitioners.
*Lloyd W. Creason, Esq.*, for the respondent.

298

OPINION.

SMITH: 1. The Casualty Co. and the Fire Co. claim to be exempt from income tax under section 103 of the Revenue Acts of 1928 and 1932 and section 101 of the Revenue Act of 1934, which provide in identical terms as follows:

SEC. 103. [REVENUE ACT OF 1928]. EXEMPTIONS FROM TAX ON CORPORATIONS.

The following organizations shall be exempt from taxation under this title—

\* \* \* \* \* \* \*

(11) Farmers' or other mutual hail, cyclone, casualty, or fire insurance companies or associations (including interinsurers and reciprocal underwriters) the income of which is used or held for the purpose of paying losses or expenses. [Revenue Act of 1928.]

Although the two insurance companies were incorporated under the laws of the Commonwealth of Pennsylvania as stock companies, and although each has a capital stock which was contributed by the Keystone Automobile Club, which at all times has owned all of the outstanding shares of stock of each, they claim to be exempt from income tax upon the ground that they operate as mutual companies.

They further contend that the respondent has erred (1) in applying the doctrine of law to the effect that exemptions are not favored and that in cases of doubt an exemption provision in a general tax law is to be construed strictly and the doubt to be resolved in favor of the taxing power, and (2) in not applying the universal rule that one who would claim the benefits of a statute need bring himself only substantially within its terms.

We think it plain that the above allegations of error on the part of the two insurance companies are without any legal support. The universal rule is, as stated by the United States Circuit Court of Appeals for the Ninth Circuit in *Retailers Credit Association of Alameda County* v. *Commissioner*, 90 Fed. (2d) 47:

It should be noted that a statute creating an exemption must be strictly construed, and any doubt must be resolved in favor of the taxing power. *Sun-Herald Corporation* v. *Duggan* (C. C. A. 2) 73 F. (2d) 298, 300, and cases cited.

Under the first Income Tax Act of October 3, 1913, mutual insurance companies were not exempted from tax. All were required to file income tax returns. Special provisions of the act were designed, however, to give them certain relief.

By the Revenue Acts of 1916, 1917, 1918, and 1921 certain mutual insurance companies "of a purely local character" were exempted from income tax. By section 231 (10) of the Revenue Act of 1924 certain mutual insurance companies were exempted from income tax "but only if 85 per centum or more of the income consists of amounts

collected from members for the sole purpose of meeting losses and expenses." The phrase "of a purely local character" does not appear in the 1924 Act.

A change was made with respect to the exemption of mutual insurance companies by the Revenue Act of 1926. Section 231 (11) of that act is identical with section 103 (11) of the Revenue Acts of 1928 and 1932 and section 101 (11) of the Revenue Act of 1934, quoted above.

Senate Report No. 52 of the Sixty-ninth Congress, first session, explains section 231 (11) of the Revenue Act of 1926 as follows:

It was believed that the provisions of existing law exempted this class of corporations from the necessity of making income tax returns, but experience has shown that such was not the case. An examination of subdivision (10) will show that the various corporations named therein are exempted only if 85 per centum or more of the income consists of amounts collected from members for the sole purpose of meeting losses and expenses. It so happens that in the case of insurance companies of a type covered by the new subdivision (11) of this section, the losses vary from year to year, and consequently, in certain years, the assessments collected are not used up in the payment of losses and expenses, and no additional money is required to be collected for the payment of losses in the succeeding year. It is only natural that these companies should keep these assessments in banks and obtain from 3 to 4 per centum interest thereon. It is clear that if no assessments are required to be made in any year that the company is not exempted for such year. In order to clear up this situation, assessments of the type mentioned are exempted by the House bill in a separate subdivision, without the 85 per centum limitation imposed by subdivision (10).

The Committee recommends that the complete exemption be confined to farmers' or other mutual hail, cyclone, or casualty companies or associations and that fire insurance companies enjoy such benefits only as now are provided under existing law.

The only inference that can be drawn from the legislative history of the provisions exempting from income tax certain mutual insurance companies is that Congress was particularly desirous of exempting mutual insurance companies which received most of their income from deposits or from assessments upon their members. There is not a particle of evidence that Congress ever intended that stock insurance companies should be exempted from tax, regardless of how they conduct their business.

Since by section 103 (11) of the Revenue Acts of 1928 and 1932, and section 101 (11) of the Revenue Act of 1934, Congress intended to exempt only certain mutual insurance companies, the question arises as to what is a mutual casualty insurance company and a mutual fire insurance company.

In *Ohio Farmers Indemnity Co.*, 36 B. T. A. 1152, we said:

* * * An insurance company is mutual when there is no group but the policyholders who have interest in it or power over it. *Equitable Life Assurance*

*Society of the United States* v. *Bowers,* 87 Fed. (2d) 687. "The theory of a mutual insurance company is, that the premiums paid by each member for the insurance of his property constitute a common fund, devoted to the payment of any losses that may occur. * * * The cash premium may as well represent the insured in the common fund as the premium note" and the mutual principle is not abrogated by the taking of cash premiums. *Union Insurance Co.* v. *Hoge,* 62 U. S. 35, 65; *State* v. *Manufacturer's Mutual Fire Insurance Co.,* 91 Mo. 311, 318. A person paying a cash premium to a mutual insurance company at the time a policy is issued becomes a member of the company and interested in its fund in proportion to the amount of the policy, and to the extent of that interest he is an insurer of all other members. The term "mutual" as applied to an insurance company "does not import any peculiar or exact method of producing mutuality in the sense of equality among its members, but * * * is simply significant of an association for the purposes of insurance, whose fund for the payment of losses consists, not of a capital mutually contributed by any uninsured parties, but of the premiums mutually contributed by the persons insured. * * *." *Mygatt* v. *New York Protection Insurance Co.,* 21 N. Y. 52; *Schimpf & Son* v. *Lehigh Valley Mutual Insurance Co.,* 86 Pa. 373. A mutual insurance company issuing policies providing for the payment of a cash premium does not lose its identity as a mutual company. * * * [Citing cases.]

We must assume that, by the phrase "mutual * * * insurance companies or associations" used in the exemption provision of the statute, Congress intended it to have the same meaning that it has in ordinary speech. Under the laws of most states, insurance companies, other than life insurance companies, are classified as stock companies or mutual companies. Different provisions of law apply to each. The statutes of the Commonwealth of Pennsylvania provide for the incorporation of both stock companies and mutual companies. The pertinent part provides:

Subject to the provisions of this Act, insurance companies of any of the following classes may be incorporated:

(a) Stock Life Insurance Companies;

(b) Mutual Life Insurance Companies;

(c) Stock Fire, Stock Marine, and Stock Fire and Marine Insurance Companies;

(d) Stock Casualty Insurance Companies; and

(e) Mutual Insurance Companies of any kind other than mutual life insurance companies. (1921, May 17, p. 1, 682, Art. II, sec. 201.)

It is manifest from the above that the Casualty Co. and the Fire Co., petitioners herein, are not mutual insurance companies under the laws of the Commonwealth of Pennsylvania.

The insurance companies contend, however, that during the taxable years 1929 to 1935 they were operated as mutual companies, and, hence, are entitled to be classed as mutual companies under the statute.

It is true that the evidence shows that they have not been operated for the profit of their sole stockholder. All of the policyholders have been treated exactly alike. The same premium has been charged to each and the same refund, the amount of which has been determined by the board of directors, has been made to each.

It is not true, however, that the companies have been operated in all respects as mutual insurance companies which have no shares of capital stock outstanding. The policyholders are not the owners of the companies' capital. They do not elect the officers and directors of the companies. The entire capital stock of each company is owned by the Keystone Automobile Club—not only the $450,000 paid in by that club originally, but also the amount capitalized by the stock dividends in 1930. The board of directors of each company has authority under the charter and bylaws to pay dividends upon the shares of stock outstanding.

We think it immaterial that up to the present time the companies have never paid dividends upon their shares of stock and that it is the intention of the present officers and directors of the Keystone Automobile Club never to seek a recovery from the companies of more than the original investment of $450,000, and the repayment of that only upon a liquidation of the companies.

In *National Grange Mutual Liability Co.*, 31 B. T. A. 666; affd. (C. C. A., 1st Cir.), 80 Fed. (2d) 316, the Board held that where an otherwise mutual insurance company had a guaranty capital, exemption was not to be denied the company because of its outstanding guaranty capital. The evidence in that case, however, showed that the policyholders were in complete control of the company. There was no capital stock. The company was operated on a strictly mutual basis and the policyholders were the owners of the assets except that they had an obligation to pay the persons who had loaned the insurance company the money called a guaranty capital. Those facts do not obtain in the instant case.

The two insurance companies are not mutual companies and the respondent did not err in denying them exemption.

2. The second contention of the Casualty Co. and the Fire Co. is that deficiencies claimed to be due from the companies for the calendar years 1929 to 1933, inclusive, are barred from assessment and collection by the statute of limitations. The basis for this claim is that the notices of deficiency were not sent out by the Commissioner until July 10, 1937, and that under the statute of limitations the respondent has only two years from the date when returns are filed for the making of such determinations and that the Commissioner had determined that the petitioners were exempt from income tax and therefore not required to file income tax returns for those years.

The two insurance companies filed no income tax returns for the years 1929 to 1933, inclusive, until July 25, 1935. It is the respondent's contention that the notices of deficiency were sent out within two years from the date of the filing of the returns and that therefore the deficiencies are not barred.

The Insurance Exchange of Keystone Automobile Club made application for exemption from income tax under the provisions of the Revenue Act of 1926. The respondent in a letter addressed to the collector on March 5, 1928, advised him as follows:

The additional evidence submitted shows that the insurance referred to above provides indemnity for liability incurred by the insured with respect to the injuries or death of third persons as the result of the negligent operation of an automobile by the insured or his agent, excluding liability for injuries or death sustained by the insured, employees of the insured or members of his family.

Based upon the foregoing, it is held that the exchange is entitled to exemption under Section 231 (11) of the Revenue Act of 1926. In accordance with this ruling, based on the evidence submitted, you are requested to notify the exchange that it will not be required to file returns under the Revenue Act of 1926, so long as there is no change in its organization, purpose or method of operation.

Any changes in the form of organization or method of operation of the exchange, as shown by the evidence submitted, must be immediately reported to you in order that the effect of such changes upon its present exempt status may be determined.

The collector sent to the Insurance Exchange or to its attorney a copy of the letter. At that time the Keystone Automobile Club was contemplating the incorporation of the Casualty Co. and the Fire Co. The attorney for the Insurance Exchange deposes that he took up with a deputy collector either late in 1928 or early in 1929 the question as to whether the two insurance companies, which he contended were continuations of the Insurance Exchange, would likewise be exempt from tax; also that he caused a consolidated return for the two companies for the period March 1 to December 31, 1928, to be prepared and that he filed it with Patrick J. Riley, a deputy collector in the collector's office on or about March 1, 1929. The return showed no tax due and according to the attorney's deposition there was attached to the return a full statement relating to the organization of the two companies. Riley died prior to the hearing of this proceeding in Philadelphia in November 1938. A search of the records in the collector's office fails to show the receipt of the return or any notation upon the collector's records that he had ruled that the two companies were exempt from tax. The respondent has not been able to find any record of the receipt of any return for the two insurance companies for the period above indicated. It appears that in a letter either dictated or sent under the supervision of Riley on March 20, 1935, responsibility for the representations claimed to have been made to the attorney for the Insurance Exchange was disclaimed. It was stated that the collector's office never made rulings as to exemptions from income tax but that such claims for exemption were always forwarded to the Commissioner at Wash-

ington for a ruling thereon in accordance with the Commissioner's regulations.

J. W. Rhine, attorney for the Casualty Co. and the Fire Co. in 1929, deposed that he represented the insurance exchange in obtaining a ruling from the Commissioner that the Insurance Exchange was exempt from income tax under the provisions of the Revenue Act of 1926. He further deposed that upon the organization of the Casualty Co. and the Fire Co. he took up with the collector's office the question of the exemption of those companies from income tax and stated that he had numerous conferences with Riley, who was deputy collector in charge of the income tax division in Philadelphia; that he handed to him a copy of an opinion which he had rendered upon the question of the exemption of income tax of the two companies and that Riley stated to him that he had no question as to the exemption of the companies. He further deposed:

*  *  *  At first I had intended not to file any return at all based on what Mr. Riley had told me, but, about March 1 [1929], in view of, as I say, some conflict of opinion between myself and Mr. Speakman, he, in the meantime, having prepared what he considered to be the proper return to be made by the two companies, I decided to file an information return, and I showed Mr. Speakman the prepared copies which, as I remember, had reported on the face of them the items of interest received, or investments which Mr. Speakman considered to be taxable. I wrote up a return myself, but I did not report any income. I wrote across the face of the return as I remember it, a reference to the exemption granted to the Insurance Exchange, and attached a copy of such letter, and claimed exemption on the front of the return by reason of that decision and attached a memorandum schedule, which memorandum schedule showed the net result of the business done by the two companies for the period between June 1, and December 31 [1928].

Rhine further deposed that he also attached a statement to the return which had been prepared by Wigner, Rockey & Co., accountants, showing just how the Insurance Exchange had been converted into the two stock companies.

With reference to the filing of the return, Rhine deposed as follows:

He [Riley] took the return, and we discussed the entire matter in a general way again, as we had discussed it before, and he said he did not think it was necessary for me to file that, but he would take that, and he walked to the outer office where the long counter is. I do not remember what the room number was, but he walked out there with the return, and came back in a few moments, and he said "O. K.," and as I remember his words, they were something to this effect, "I have marked on my file that these two companies are a continuation of the Insurance Exchange, and are tax exempt in accordance with that letter."  *  *  *

We do not think that the deposition of J. W. Rhine is conclusive that the return was filed and certainly is not conclusive that the respondent has ever ruled that the Casualty Co. or the Fire Co. was exempt from income tax and not required to file income tax returns.

The respondent did rule that the Insurance Exchange was exempt from tax under the provisions of the Revenue Act of 1926 and was not required to file income tax returns so long as the facts obtained which had been presented to the respondent. But the respondent never ruled or was asked to rule upon the question of the exemption from income tax of the two insurance companies. They are stock insurance companies subject to entirely different provisions of the laws of the Commonwealth of Pennsylvania from the Insurance Exchange. Furthermore, they are subject to different provisions of the income tax law.

The respondent's regulations are explicit as to the procedure to be followed by a company in obtaining a ruling as to whether it is exempt from income tax. Article 521 of Regulations 74 and 77, promulgated under the provisions of the Revenue Acts of 1928 and 1932, provide in identical terms as follows:

ART. 521. *Proof of exemption.*—In order to establish its exemption and thus be relieved of the duty of filing returns of income and paying the tax, it is necessary that every organization claiming exemption file an affidavit with the collector of the district in which it is located, showing the character of the organization, the purpose for which it was organized, its actual activities, the sources of its income and its disposition, whether or not any of its income is credited to surplus or may inure to the benefit of any private shareholder or individual, and in general all facts relating to its operations which affect its right to exemption. To such affidavit should be attached a copy of the charter or articles of incorporation, the by-laws of the organization, and the latest financial statement, showing the assets, liabilities, receipts, and disbursements of the organization.

In the case of the particular classes of organization listed below, the following additional information should be embodied in or attached to, and made a part of, the affidavit referred to above:

\* \* \* \* \* \* \*

(8) Mutual insurance companies: Copies of the policies or certificates of membership.

The two companies never complied with that article. They never submitted copies of policies or of certificates of membership as required by the regulations. The most that can be said, on the evidence of record, is that the companies' attorney deposed that he took up with Deputy Collector Riley the question of the status of the companies and obtained his ruling that they were exempt from income tax the same as the Insurance Exchange and that he filed some information return with regard to the companies for the fiscal period March 1 to December 31, 1928.

In support of the contention that the assessment and collection of taxes for the years 1929 to 1933 are barred by the statute of limitations, the petitioners cite *Balkan National Insurance Co.* v. *Commissioner* (C. C. A., 2d Cir.), 101 Fed. (2d) 75. The ruling of the court in that case was that where, before time for filing a return for 1918, taxpayer's property and records were seized by the Alien Property Custodian and the records were never returned, so that it was not

possible for the taxpayer to make a return for 1918, the Government is not entitled to the benefit of the unlimited assessment and collection period applicable to cases where no return was filed; that the 1918 tax was outlawed because assessment was not made within five years after the unsigned return for 1918 was filed in 1919 by agents of the Alien Property Custodian.

There are no parallel facts in the proceedings at bar. The companies were at all times in possession of their own records from which required income tax returns could be filed.

The Board does not think that a ruling made by a deputy collector of internal revenue that the two insurance companies were exempt from income tax is a bar to the collection of taxes that are legally due. The respondent is not responsible for the unauthorized acts of his subordinates. *F. W. Darling*, 19 B. T. A. 337; *John D. Biggers*, 39 B. T. A. 480. Exemption is a pure question of law. *Stewart* v. *United States*, 24 Fed. Supp. 145.

The only act which would start the operation of the statute of limitations is the filing of a return required by law. The returns required by law for the years 1929 to 1933, inclusive, were not filed by the petitioner companies until July 25, 1935. The deficiencies herein claimed to be due were determined on July 10, 1937, or within two years of the date of the filing of the returns. The determinations were timely and the assessment and collection of the deficiencies are not barred.

3. The two insurance companies further contend that even if they are required to file income tax returns, the returns would necessarily show no taxable income; for they contend that they are entitled to deduct from gross income all amounts of income not otherwise deductible as amounts retained "for the payment of losses, expenses, and reinsurance reserves." This claim of the companies is predicated upon section 208 (c) of the Revenue Acts of 1928, 1932, and 1934, which reads in material part as follows:

(c) Deductions.—In addition to the deductions allowed to corporations by section 23 the following deductions to insurance companies shall also be allowed, unless otherwise allowed—

\* \* \* \* \* \* \*

(3) Mutual insurance companies other than life and marine.—In the case of mutual insurance companies (including interinsurers and reciprocal underwriters, but not including mutual life or mutual marine insurance companies) requiring their members to make premium deposits to provide for losses and expenses, the amount of premium deposits returned to their policyholders and the amount of premium deposits retained for the payment of losses, expenses, and reinsurance reserves.

Under this provision of the taxing act the respondent has held, in Regulations 74 and Regulations 77, promulgated under the provisions of the Revenue Acts of 1928 and 1932:

\* \* \* A stock fire insurance company, operated on the mutual plan to the extent of paying dividends to certain classes of policyholders, may make a return on the same basis as a mutual fire insurance company with respect to its business conducted on the mutual plan. [Art. 1014.]

No similar provision is found in Regulations 86, promulgated under the provisions of the Revenue Act of 1934.

The companies contend that although the regulation mentions only "stock fire insurance" companies the same reasoning would also apply to a stock casualty insurance company. They also claim that both companies were "operated on a mutual plan to the extent of paying dividends to certain classes of policyholders."

In the determination of the deficiencies herein the respondent has permitted the insurance companies to deduct from gross income all dividends paid to their policyholders. The propriety of such deduction is not raised by the pleadings.

The evidence does not show that the net income of the companies as determined by the respondent was retained for the payment of losses, expenses, and reinsurance reserves. Most of it is shown in the petitioner's reports to the Insurance Commissioner of the State of Pennsylvania in either its security fluctuation reserve or its contingent reserve. J. Borton Weeks, the president of the two insurance companies, was asked, on cross-examination:

Q In your opinion, Mr. Weeks, as president of the two insurance companies, do you think the insurance companies are worth more than $450,000,—the amount that you carry on the Club's books?

A Well, they are worth many times that.

Q Are they worth the increased capital and surplus of $750,000?

A Of course. They could not possibly be worth less than $750,000. As a matter of fact, they are worth over $2,000,000, according to our last annual statement.

The question arises as to the meaning of the statute which permits a mutual insurance company to deduct from gross income amounts retained for the payment of losses, expenses, and reinsurance reserves. In article 207–1 of Regulations 86, the respondent has provided:

ART. 207–1. \* \* \*

In addition to the deductions and credits to which corporations generally are entitled as defined and limited under sections 23, 24, and 26, insurance companies of this type [mutual insurance companies other than life and marine] are entitled to deduct from gross income:

\* \* \* \* \* \* \*

(2) The amount of premium deposits retained at the end of the taxable year for the payment of losses, expenses and reinsurance reserves. As used in this article the term "losses" means incurred losses; the term "expenses" means accrued expenses and the term "reinsurance reserves" means the amount necessary to reinsure outstanding policies for their unexpired terms.

The evidence does not show that the amounts deducted from gross income as amounts retained for the payments of losses, expenses, and

reinsurance reserves come within the definition of those terms as defined in article 207–1 of Regulations 86, which, we think, correctly interprets the law.

The simple facts are that over the period 1929 to 1935, inclusive, each insurance company has accumulated large amounts of assets which are not for the payment of incurred losses, accrued expenses, or for the purpose of reinsuring outstanding policies for their unexpired terms. Legally these accumulations of income belong to the sole stockholder of the two insurance companies. We see no reason why the companies should not be taxed upon their net incomes as determined by the respondent.

It should also be observed that the two companies are claiming the right to deduct from gross income not only all amounts allowed by the respondent and all payments of losses and expenses but, in addition, the balance of its net income as retained for the payment of losses and expenses. This claim is made for each year. Therefore, the amounts claimed as being held for the purpose of paying losses and expenses at the end of the year are deducted from gross income in the following year as losses and expenses paid. In this way there is a duplication of the deduction. We are satisfied that Congress never intended to give to mutual insurance companies a duplication of deductions in the manner above described. Section 204 (e) of the Revenue Act of 1934 provides that "Nothing in this section shall be construed to permit the same item to be twice deducted." We do not think that by this provision Congress intended to change the law, but simply to make explicit that which was not made explicit in the prior income tax acts relating to the taxation of mutual insurance companies. A construction of a taxing statute permitting a duplication of deductions is not favored by the courts. Cf. *Ilfeld Co.* v. *Hernandez*, 292 U. S. 62. The claim of the two insurance companies that they can have no taxable income must be denied.

4. The Acceptance Co. claims to be exempt from income tax upon the ground that it is a mere adjunct of its sole stockholder, the Keystone Automobile Club. Its claim is that the Acceptance Co. is exempt from tax because the club is exempt.

From the evidence of record it clearly appears that the Acceptance Co. operates at a profit and that that profit inures solely to the Keystone Automobile Club. The claim that it is exempt because the club is exempt ignores the distinction between a corporation and its stockholders.

In *Burr Creamery Corporation*, 23 B. T. A. 1007; affd., 62 Fed. (2d) 407, the Board said in part:

However, irrespective of whether the California Milk Producers' Association owned all the stock of the petitioner in the years in question, we do not believe

that the petitioner is entitled to exemption under section 231 (11) of the Revenue Act of 1921. Since this section grants exemption from taxation, it must be strictly construed. A taxpayer attempting to avail itself of the benefits of this section must prove clearly that it comes within its provisions. * * *

In *Sand Springs Railway Co.*, 21 B. T. A. 1291, it was held that a corporation was not exempt because its stock is owned by an exempt corporation. See also *Journal of Accountancy, Inc.*, 16 B. T. A. 1260. The Acceptance Co. is liable for the deficiencies determined by the respondent.

Reviewed by the Board.

*Decisions will be entered for the respondent.*