Holsey Auto Sales, Inc. v. Commissioner.
Holsey Auto Sales v. Commissioner
Docket No. 12756.
United States Tax Court
1948 Tax Ct. Memo LEXIS 170; 7 T.C.M. (CCH) 351; T.C.M. (RIA) 48101; June 8, 1948
Edward E. Burke, C.P.A., 921 Bergen Ave., Jersey City, N.J., for the petitioner. Jonas M. Smith, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: By this proceeding petitioner seeks a redetermination of deficiencies for 1943 as follows: Income Tax
$ 94.84
Declared Value Excess-Profits Tax
388.54
Excess-Profits Tax
3,732.92
The only question before us is petitioner's right to capitalize and use in its 1943 opening inventory costs paid in 1942 on cars held by it subject to Government restrictions on sale, these costs having been deducted in 1942. The parties submitted *171 a stipulation of fact and evidence was adduced at the hearing. Findings of Fact The stipulated facts are hereby found ccordingly. Petitioner, a New Jersey corporation, was organized in February, 1927. It filed its Federal tax returns for the period in question with the collector of internal revenue for the fifth district of New Jersey at Newark. Petitioner was a dealer in new Chevrolet automobiles. On December 31, 1941, the Federal Government restricted the sale of new automobiles. On December 31, 1942, petitioner had on hand 49 new Chevrolet automobiles. During 1942 it made the following expenditures in relation to these cars: Storage
$2,200.00
Preparing cars for storage
392.00
Monthly check-up
1,100.00
Materials used
72.03
Interest on financing
1,349.98
$5,114.01
The closing inventory used in the 1942 income and declared value excess-profits tax return filed by petitioner on March 15, 1943, did not include the $5,114.01 above mentioned. In petitioner's 1942 income and declared value excess-profits tax return (executed March 13, 1943, and receved for filing March 15, 1943) $5,114.01 was claimed as a deduction from gross income as operating *172 expense and was allowed by respondent. Petitioner has not filed an amended income and declared value excess-profits tax return for 1942. No agreement has been executed extending the statutory period in which such taxes for 1942 would be assessed. On March 1, 1943, a letter signed by T. Mooney, Deputy Commissioner of Internal Revenue, was addressed to James A. Councilor and Company, Tower Building, Washington, D.C. It stated as follows: "In re: Automobile dealers - Capitalization of carrying charges. "Sirs: "Reference is made to your letter of October 29, 1942, with respect to inquiries received from automobile dealers who are members of the National Automobile Dealers' Association, regarding the capitalization of carrying charges on new automobiles being financed by loans from the Reconstruction Finance Corporation. "In view of the Federal restrictions with respect to the disposition of new automobiles and in order to clearly reflect the income of the dealers affected thereby, it is the opinion of this office that such dealers may, at their option, include in their inventories of new cars warehouse and maintenance expenses applicable thereto which have been incurred subsequent *173 to the imposition of the restrictions referred to." Petitioner was not a member of the National Association of Automobile Dealers. During the calendar year 1943 petitioner was a member of the New Jersey Automotive Trade Association. On March 9, 1943, that association prepared a "Bulletin 91," which was mailed to petitioner not later than March 10, 1943. The bulletin stated as follows: "DEALERS MAY CAPITALIZE CARRYING CHARGES ON FROZEN CARS "We have just received the following information from the NADA and hope it will reach you in time to be of benefit to those dealers who wish to take advantage of the ruling made March 1st by the Commissioner of Internal Revenue - "'Under date of March 1st the Commissioner of Internal Revenue made a ruling on the petition which we filed some time ago permitting automobile dealers to capitalize carrying charges in connection with their inventories of new automobiles. "'This gives the automobile dealer the opportunity of determining whether for tax purposes it is more advantageous for him to deduct in 1942 the expenses which he incurred in connection with new automobiles which he had in stock but did not sell in 1942. If he believes that *174 his income will be greater in 1943 than in 1942 he is given the privilege of adding the expenses incurred on new automobiles which he still had on hand on December 31, 1942 to their inventory value. "'This, in effect, will carry those expenses into 1943 when they can be deducted upon the sale of those cars, thereby decreasing the net profit in 1943. Although the Office of Price Administration, in Price Schedule 85, permits dealers to add 1% of the list price each month to compensate them for carrying expenses, the Internal Revenue Department will not recognize the 1% as such and the dealer is permitted to capitalize only actual expenses incurred'. "The exact language of the ruling is: 'In view of the Federal restriction with respect to the disposition of new automobiles and in order to clearly reflect the income of the dealers affected thereby, it is the opinion of this office that such dealers may, at their option, include in their inventories of new cars warehouse and maintenance expenses applicable there-to which have been incurred subsequent to the imposition of the restrictions referred to'." Charles V. Holsey, who was the dealer and petitioner's president and manager, received *175 all petitioner's mail personally, including the bulletins from the New Jersey Association. Petitioner's secretary and office manager did not receive the mail and did not see any of the bulletins. Prior to filing its returns for 1942 petitioner had knowledge of the above-described ruling by respondent. Petitioner first contacted the revenue agent with respect to its 1942 tax liabilities during August, 1944. The revenue agent began the audit of the 1942 returns during October of 1944. The examination resulted in a report dated January 3, 1945, in which it was stated that petitioner desired to capitalize the $5,114.01 charges "at this time in accordance with a Bureau ruling." The report continued: "These charges may not be capitalized at this time because the taxpayer did not exercise its option at the time of filing the original return." On April 4, 1945, petitioner filed a protest with the Internal Revenue Agent in Charge at Newark to the above-mentioned report, stating: "D. The years involved are 1941 and 1942. The Revenue Agent proposes additional income tax of $520.88 for 1941 and an overassessment of $2,198.53 for that year on Excess Profits Tax. He also proposes an additional *176 tax of $98.96 on 1942 income tax. The taxpayer contends that there was no deficiency in the 1941 income tax and no overassessment of 1941 Excess Profits Tax. The taxpayer admits that there is a deficiency for the year 1942 and that such deficiency may have been greater than the amount stated by the Internal Revenue Agent. "E. The taxpayer takes exception to the statement of the Internal Revenue Agent that the right to inventory certain expenses with relation to new cars frozen by Government order, is to be denied the taxpayer because the option was not exercised at the time of filing the original return, and states that the ruling with relation to this matter did not require the exercising of such option at the time the original return was filed." The tax returns for 1942 and 1943 were executed by "Charles V. Holsey Pres." and the petitioner herein was verified by him. Opinion Fundamentally the technical question involved here is one of capitalizing or "expensing" costs of maintenance which petitioner as an automobile dealer was required to pay on cars that it could not sell expeditiously. On March 9, 1943, a ruling by respondent, dated March 1, was circulated, purporting to *177 permit such dealers to choose which method they preferred. There is agreement that the methods are mutually exclusive. Petitioner shortly thereafter filed its 1942 return, in which the costs in question were deducted as a current expense. No amended return was filed. No effort was made to pay an additional tax for 1942. But when, by early 1944, petitioner came to file the return for 1943, the year now in controversy, it again deducted, this time as a capital item by adjustment to inventory, the same costs, which was tantamount to a comparable deduction for 1943, since all of the cars were sold in that year. Respondent raised no question as to the expense deduction for 1942, and the statute of limitations for the determining of any deficiency for that year has now expired. Petitioner being a corporation could act only through its authorized officers or employees. See Fletcher, Cyclopedia of the Law of Private Corporations, section 267. Receipt of the disputed notice is shown to have fallen in the province of petitioner's president. The exercise of any election or option resulting from the notice would likewise, at least in the absence of other evidence, more probably reside in its *178 president than in any other officer. Asbury Park & Ocean Grove Bank v. Stoneham (Sup. Ct., New Jersey), 157 A. 650; see Myrtle Avenue Corp. v. Mt. Prospect Bldg. & Loan Assn., 169 A. 707, 708. But that officer was not called as a witness and we must, therefore, assume that his testimony, if given on these two matters, would have been favorable to respondent. Wichita Terminal Elevator Co., 6 T.C. 1158, 1165, affirmed (C.C.A., 10th Cir.), 162 Fed. (2d) 513. And that a different employee of petitioner testified is of no significance, and certainly fails to sustain its burden of proof where, as here, the record shows that he was not the one who would have had knowledge of the central issue of fact about which the case revolves. We have accordingly found as a fact, because the burden of proof otherwise has not been sustained by petitioner upon which it rested, that petitioner received due notice of its right to capitalize these deductions at its option; and that it deliberately and affirmatively elected instead to charge the items as current expense and to return its income accordingly. We do not for a moment suggest that any misstatements *179 or falsifications of fact are attributable to petitioner's witness. But the testimony that he had no knowledge of the notice admittedly sent to petitioner, and the receipt of which would not normally have fallen in his jurisdiction is of no probative value in arriving at a conclusion on the sole issue of fact. This removes from consideration the legal questions which the controversy would otherwise present. Petitioner's contention that an option may not be exercisable in the absence of knowledge of its existence is deprived of factual support and, accordingly, its consideration becomes unnecessary. But see J. E. Riley Investment Co. v. Commissioner, 311 U.S. 55. The ruling itself, as well as the statute [1] and pertinent regulations, [2] eliminate any doubt, even if one could otherwise exist, that the addition of the carrying charges to a taxpayer's inventory figure - that is, their capitalization - was an alternative to the current charge-off as an expense. The word used in the ruling is "option." Petitioner clearly exercised such an option when it deducted the item as an expense and charged it against current income. We need not consider whether it could subsequently *180 have changed its position and elected to restore the item to income and add it to inventory since that was never done. Cf. Haggar Co. v. Helvering, 308 U.S. 389. The statute of limitations having run against the earlier year, the sole relief available would be to permit petitioner a second deduction for an item of which it has already voluntarily taken the benefit. The result would be a double deduction which is not envisaged by statute, regulation, nor ruling. See Keystone Auto Club Casualty Co., 40 B.T.A. 291, 308; supplemental opinion, 42 B.T.A. 356, affirmed (C.C.A., 3rd Cir.), 122 Fed. (2d) 886; certiorari denied, 315 U.S. 814. Decision will be entered for the respondent. Footnotes
1. Internal Revenue Code, section 24(a)(7)↩; and cf. section 113(b)(1)(A). 2. Regulations 111, section 29.24-5.↩